# Richmond.

FIDELITY & DEPOSIT COMPANY V. BEALE, JUDGE, AND ANOTHER.

JANUARY 14, 1904.

Absent, Buchanan, J.*

1. PROHIBITION—*Office of.*—The office of the writ of prohibition is not to correct error, but to prevent an excess of jurisdiction by the court or judge to whom it is directed. If the court or judge has jurisdiction to enter any decree at all in the proceeding sought to be prohibited the writ does not lie.
2. COUNTY OFFICERS—*Proceedings Against Deputies—Jurisdiction of County Court—Indemnity Bonds.*—Under the provisions of sections 910 and 912 of the Code, allowing sheriffs, sergeants and other officers to proceed in the County Courts by motion, after notice, against their deputies and their sureties, for any default or misconduct in the office of such deputies for which their principals are liable, and to recover the full amount for which such principals are liable by reason of such default or misconduct, a county treasurer, who has taken from his deputy a bond with surety conditioned to indemnify the treasurer from acts of larceny and embezzlement on the part of the deputy, may proceed by motion in the County Court against such deputy and his surety for a judgment for taxes for which the deputy has failed to account. although the amount involved exceeds one hundred dollars, and the liability of the deputy and his surety be not co-extensive.

Error to a judgment of the Circuit Court of Westmoreland county, on an application for a writ of prohibition, in which the plaintiff in error was the petitioner, and the defendants in error were the defendants.

*Affirmed.*

*Judge Buchanan was detained at home by sickness.

The proceeding out of which the present litigation grew consists of a notice by the treasurer of Westmoreland county to his deputy and surety, founded on a bond of indemnity given by them to the treasurer.   The following is a copy of the notice and bond:

"To A. C. Brown, Deputy Treasurer of Westmoreland County, Va., and the Fidelity and Deposit Company of Maryland, His surety:

"Whereas the said A. C. Brown, who came into the office of deputy treasurer under me, R. H. Stuart, treasurer of Westmoreland county, Virginia, with the said Fidelity and Deposit Company of Maryland as surety on his bond as such deputy treasurer, has defaulted and is in arrears for the following moneys and public funds received by him, or which ought to have been received by him, by virtue of his said office, for which I, as his principal, am chargeable; that is to say, for the balance due on tax tickets for the year 190   , which went into the hands of the said A. C. Brown in a certain sum, to-wit: a sum not exceeding $1,800.00; and whereas  the said A. C. Brown has failed to account for said balance and the same is still due and owing, notice is therefore hereby given to each of you that, on the second day of the next term of the County Court of Westmoreland county, Virginia (that being the November term of said court, 1902), I shall move the said court to give judgment against you jointly for such sum as may be due and owing by the said A. C. Brown on account of taxes for the year 1900, as aforesaid, and for which you and each of you, may be liable in the premises, with lawful interest, penalties, and costs, this 12th day of November, 1902.

"Respectfully,

                              R. H. STUART,
          "Treasurer of Westmoreland Co., Va., by Counsel."

"Amount, $4,000.00.      No. 211773.          Premium, $15.

"Fidelity and Deposit Company of Maryland.

"Home Office,                              Baltimore, Md.

"Whereas Arthur C. Brown, Montross, Virginia, hereinafter called the 'employee,' has been appointed to the position of deputy treasurer of Westmoreland county, Va., in the service of R. H. Stuart, treasurer of Westmoreland county, Va., hereinafter called the 'employer,' and has been required to furnish a bond for his honesty in the performance of his duties in the said position; and

"Whereas the employer has delivered to the Fidelity and Deposit Company of Maryland, a corporation of the State of Maryland, hereinafter called the 'company,' certain statements and declarations in writing relative to the duties and accounts of the employee, the manner of conducting the business of the employer and other matters which, together with any other statements or declarations in writing made by the employer, and required by or lodged with the company, do and shall constitute the basis of this contract, or any continuation thereof, and it is hereby declared, if the employer be a corporation, that any statements or declarations made in writing by the president, secretary, treasurer, cashier, or any other officer or director of the corporation, shall be considered the statements or declarations of the employer within the meaning hereof.

"Now, therefore, in consideration of the sum of twenty-five and 00/100 dollars, paid as a premium for the period from October 22, 1900, to October 22, 1901, at 12 o'clock, noon, and upon the faith of said statements and declarations of said employer, as aforesaid, it is hereby agreed and declared that, subject to the provisions and conditions herein contained, which shall be condition precedent to the right on the part of the employer to recover under this bond, the company shall, at the

expiration of three months next after proof of a pecuniary loss as hereinafter mentioned has been given to the company, reimburse the employer to the extent of the sum of four thousand dollars, and no further, such pecuniary loss as the employer shall have sustained by any act of larceny or embezzlement upon the part of the employee in the performance of the duties of the office or position in the service of the employee hereinbefore referred to, as the same have been, or may hereafter be, stated in writing by the employer to the company, and occurring during the continuance of this bond, and discovered during said continuance, or within six months thereafter, or within six months after the death, resignation or removal of the employee from the service of the employer, when the same occurs prior to the expiration of this bond.

"This bond may continue from year to year, at the option of the employer at the same or an agreed premium rate, so long as the company shall consent to receive the same, in which event the company shall remain liable for any act of larceny or embezzlement committed by the employee between the original date of this bond and the time to which it shall have been continued; provided, that the liability of the company as surety for the employee to the employer shall not exceed the amount above written, whether the loss shall occur during the term above named, or during any continuation or continuations thereof, or partly during the said term and partly during said continuation or continuations.

"That the employer shall immediately give the company notice, in writing, by a registered letter, addressed to the president of the company, Baltimore, Maryland, of the discovery of any act which may be made the basis of any claim hereunder, and shall file with the company his itemized claim hereunder at his own cost and expense, with full particulars thereof, duly sworn to, immediately thereafter; and any claim which shall not be filed by the employer with the company within six months

after the expiration or cancellation of this bond, or within six months after the employee shall have ceased to be in the employer's service, shall not be payable hereunder. And upon the making of such claim, this bond shall wholly cease and determine as regards any liability for any act of the employee, committed subsequent to the discovery of such loss, and this bond shall be surrendered to the company on payment of such claim.

"That if the employer shall at any time hold concurrently with this bond, or represent to the company in any statement or declaration to it, that he does or will at any time hold concurrently with this bond, any other bond or guarantee of security from or on behalf of the employer, the employer shall be entitled, in the event of loss as hereinbefore stated, to claim hereunder only such proportion of the loss as the amount covered by this bond bears to the whole amount of security carried, or so stated as carried or to be carried on the employee's behalf, whether the employer shall be able to reimburse himself from such other bond or guarantee so carried, or stated to be carried, or not, or whether the same has been allowed to lapse or not.

"That if the company shall so elect, this bond may be cancelled at any time by giving one month's notice to the employer and refunding the premium paid, less a *pro rata* part thereof for the time this bond shall have been in force, remaining liable for all or any act covered by this bond, which may have been committed by the said employee, up to date of such determination, and discovered and notified to the company within the limit of time hereinbefore provided for.

"That the employer shall, when required by the company, give all the aid and information in its power (at the cost and expense of the company) to bring the said employee to justice or to aid the company to sue for and to obtain reimbursement from the employee or his estate of monies which the company shall have paid or become liable to pay by virtue of this bond.

"That this bond will become void as to any claim for which

the company is responsible hereunder to the employer if the employer shall fail to notify the company of the discovery of any act which may be made the basis of any claim hereunder immediately after it shall have come to the knowledge of the employer. And if, without previous notice to and consent of the company thereto, the employer has entrusted or shall entrust the employee with money, securities, or other personal property after having discovered any act of dishonesty, or condones any act for which the company may be liable hereunder or makes any settlement with the employee for any loss hereunder, this bond shall be null and void, and any willful misstatement or suppression of facts in any claim made hereunder renders this bond void from the beginning.

"That any suits at law or proceedings in equity brought against this bond to recover any claim hereunder must be instituted and process served upon the company within twelve calendar months next after the first notice of said claim is filed with the company.

"That the company, upon the execution of this bond, shall not thereafter be responsible to the employer under any bond previously issued to the employer on behalf of said employee, and upon the issuance of any bond subsequent hereto upon said employee in favor of said employer, all responsibility hereunder shall cease and determine, it being mutually understood that it is the intention of this provision that but one (the last) bond shall be in force at one time, unless otherwise stipulated between the employer and the company.

"And it is hereby declared, if the employer be a corporation, that the acts or knowledge of the president, treasurer, secretary, cashier, or any other officer or director of the corporation, shall be the acts or knowledge of the employer within the meaning hereof.

"That no one of the above conditions or provisions contained in this bond shall be deemed to have been waived by or on behalf

of the company, unless the waiver be in writing, over the signature of its president and secretary, and its seal thereto affixed.

"In witness whereof, the said Arthur C. Brown (the said employee) has hereunto set his hand and seal, and the said company has caused this bond to be signed by its president and its assistant secretary, and its corporate seal to be hereunto affixed on this 22d day of December, 1900.

"Signed, sealed and delivered by the said employee in the presence of."

*Leake & Carter* and *R. C. Mayo,* for the plaintiff in error.

*J. W. Chinn, Jr.,* and *T. J. Downing,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

R. H. Stuart was the treasurer of Westmoreland county. A. C. Brown was his deputy, who gave a bond with the Fidelity and Deposit Company as his surety, conditioned to reimburse the principal to the extent of $4,000 such pecuniary loss as he might sustain by any act of larceny or embezzlement upon the part of A. C. Brown in the performance of his duties as deputy treasurer of R. H. Stuart, treasurer of Westmoreland county, for the year beginning October 22, 1900, and ending October 22, 1901. On the 13th of November, 1902, R. H. Stuart caused a notice to be served upon his deputy, A. C. Brown, that he would move the County Court of Westmoreland county to give judgment against him and the surety for a sum not exceeding $1,800, for which Brown had failed to account, being part of the taxes for the year 1900. The Fidelity and Deposit Company having accepted service of the notice of this motion, certain proceedings were had, which need not now be considered.

Thereafter the Fidelity and Deposit Company gave notice to A. C. Brown and R. H. Stuart that it would, on the 23d day of January, 1903, apply to the judge of the Circuit Court of Westmoreland county for a writ to prohibit and restrain the County Court of Westmoreland county and the parties to the proceeding from taking further jurisdiction over the Fidelity and Deposit Company in the motion pending in said court under the style of *R. H. Stuart* v. *A. C. Brown and the Fidelity and Deposit Company.* In pursuance of this notice, a formal petition, praying that the writ of prohibition issue, was filed. R. H. Stuart appeared, demurred and answered, and upon these pleadings the judge of the Circuit Court in vacation denied the writ, and to that order a writ of error was awarded by one of the judges of this court.

It is claimed upon the part of the Fidelity and Deposit Company, that, inasmuch as judgment is asked for more than one hundred dollars, the County Court has no jurisdiction to entertain the motion, while defendant in error relies upon sections 910 and 912 of the Code, which are as follows:

"If any deputy of a sheriff, sergeant, or other officer commit any default or misconduct in office, for which his principal or the personal representative of such principal is liable, or for which a judgment or decree shall be recovered against either, such principal or his personal representative may, on motion, obtain a judgment against such deputy and his sureties, and their personal representatives, for the full amount for which such principal or his personal representative may be so liable, or for which such judgment or decree may have been rendered. But no judgment shall be rendered by virtue of this section for money for which any other judgment or decree has been previously rendered against such deputy or his sureties, or their personal representatives."

"Any motion under either of the two preceding sections may be made in the court of the county or corporation, or in the

Circuit Court of the county or corporation, in which the default or misconduct of the deputy occurred or was committed."

The office of the writ of prohibition is not to correct error, but the sole question is, whether the proceeding sought to be prohibited is in excess of the jurisdiction of the court or judge to whom it is directed. *Hogan* v. *Guigon,* 29 Gratt. 705.

If the County Court had jurisdiction to enter any judgment upon the notice presented for its consideration by R. H. Stuart, the petition for a writ of prohibition was properly rejected.

Counsel for plaintiff in error relies upon that clause in section 910 of the Code which says, that in case of default of the deputy the principal may obtain a judgment against him and his sureties "for the full amount for which such principal or his personal representative may be so liable," and points out that the contract of indemnity in this case is not for the faithful performance of duty by A. C. Brown, as deputy treasurer of Westmoreland county, but that the guaranty company only undertakes to provide indemnity for the principal for acts of larceny or embezzlement upon the part of the employee in the performance of his duties as deputy treasurer. It is true that the surety or guarantor can only be held by the express terms of his contract, and it may be that there would be one measure of recovery against the principal under this notice, and another measure of recovery against the guarantor or surety. Derelictions of duty on the part of the deputy which could not be classified as acts of larceny or embezzlement would not be within the undertaking on the part of the Fidelity and Deposit Company, but this consideration is wholly independent of the general jurisdiction of the tribunal in which the principal, R. H. Stuart, seeks redress for the default of his deputy. It grows out of the contract between the parties. The law did not require Stuart to take any bond from his deputy. In his effort to protect himself against the delinquencies of his deputy, he was at liberty to take a bond with such conditions as to him seemed best. He could

have required the surety to indemnify him against all defaults
in the performance of his duties, but he contented himself with
taking indemnity only against his acts of larceny and embezzle-
ment.    It is not perceived that this can affect the jurisdiction
of the tribunal in which he seeks to secure such indemnity as he
is entitled to demand by virtue of his contract.    If the County
Court has jurisdiction over the subject, it would proceed in the
same manner, be controlled by the same mode of procedure, be
governed by the same law in ascertaining the rights of the
parties, and enter the same judgment as would, under like con-
ditions have been rendered in the Circuit Court.    Section 912
expressly provides that any motion under sections 910 or 912
may be made in the County Court of the county or corporation,
or in the Circuit Court of the county or corporation in which the
default or misconduct of the deputy occurs or was committed.
That section has been construed by this court in *Hall* v. *Ratliff,*
93 Va. 327, 24 S. E. 1011, in which the jurisdiction of a county
court over a motion by a county treasurer against his deputy
and sureties is fully sustained.    "Whether or not the deputy has
committed any default or misconduct in office, and to what ex-
tent, if any, his sureties are liable to the principal," are ques-
tions, which, as counsel for defendant in error has well said,
"can only be determined by the evidence introduced on the
trial of the motion, of which the bond, upon which it is sought
to hold the surety liable, would form a part."

The general jurisdiction of county courts in respect to pecu-
niary matters is limited to one hundred dollars.    When, there-
fore, it was determined to give those courts jurisdiction over con-
troversies between sheriffs, sergeants, or other officers, and their
deputies on account of their default or misconduct in office, it
was provided that the judgment might be "for the full amount"
in controversy.    It seems plain that this language was used not
as a limitation upon the jurisdiction of the county courts, and as
operating to confine their jurisdiction within a class of cases in

which the liability of the deputy and his sureties would be co-extensive, but was necessary and proper by reason of the fact that under the general law the jurisdiction of county courts with respect to matters merely pecuniary was limited to sums not greater than one hundred dollars, whereas with respect to matters embraced in section 910 it was the purpose of the Legislature that the county courts should have jurisdiction over them without respect to the amount involved.

There is no error in the judgment of the Circuit Court, and it is affirmed.

*Affirmed.*