## Richmond

*IN RE* ALAN C. JOHNSTON

No. 1629-85

Decided December 2, 1986

COUNSEL

Gregory S. Hooe (Taylor & Morris, P.C., on brief), for appellant.

John J. Mizell, Jr. (Spinella, Owings & Shaia, on brief), for appellee.

OPINION

COLE, J. — Alan Chesley Johnston (husband) and Cynthia Denise Clark, formerly Cynthia B. Johnston (wife), were married on February 9, 1969. Their only child, Amanda Brown Johnston (Amanda), was born on September 28, 1969. The husband was granted a final divorce from wife on October 26, 1971, in the General Court of Justice, District Court Division, Bertie County, North Carolina. Custody of Amanda was awarded to the wife. However, in an order dated November 20, 1980, the custody of Amanda was transferred to the father by consent of the parties.

Amanda lived with her mother in Franklin, Virginia, from 1972 until 1979. For a short period prior to the entry of the November 20, 1980, order in North Carolina, Amanda resided with her father in Arkansas. Evidence heard by the trial court indicates that in June 1984, Amanda, age fifteen at the time, went out with a boy following a job as a babysitter. Her father had forbidden her to see this particular boy, and when he learned of the incident, he punished her by striking her about thirty times from her arms down with his belt. He also knocked over the bookshelf in her bedroom and pushed all of her possessions from her mantel with his hand. He then went upstairs, had something to drink, and returned to her room to strike her about twenty more times with his belt, leaving bruises on her body as a result of the blows. He told Amanda that if she did anything like that again, "he would do that much more and worse." As additional punishment, he unilaterally denied her the right to visit her mother in Virginia for three to four weeks during her summer vacation.

On January 14, 1985, Amanda drove the car without her father's permission, with only a learner's permit and with no adult in the car. Prior to this occasion she had driven the car with his knowledge and approval several times a week. On this occasion, when she returned home after using the car for thirty minutes, the

father drove up behind her. Although he did not physically punish her at the time, he told Amanda that she "knew what would happen to her." She understood this to mean that she would be punished in a manner similar to that previously administered. When her father did not speak to her en route to school the following morning, Amanda called her mother in Virginia, explaining her fear as to what would happen. The mother, complying with her request, obtained an airplane ticket for her to come to Virginia. Amanda voluntarily went to Little Rock, boarded a plane, and flew to Henrico County, Virginia, where she has resided with her mother and attended school since January 16, 1985.

Clark filed a petition for a preliminary protective order in the Henrico Juvenile and Domestic Relations District Court on January 16, 1985, pursuant to Code § 16.1-253(B). After an *ex parte* hearing, the mother and child being present, the court on January 16, 1985, entered a temporary restraining order, restraining the father from interfering with, contacting, or removing Amanda from the jurisdiction of the court. On January 18, 1985, an adversary hearing was held concerning the temporary protection order, at which time counsel for Johnston was present. He objected to the court's jurisdiction, but was overruled by the court, leaving the temporary protective order in effect. An order carrying out this decision was entered on January 28, 1985.

Prior to the hearing on January 18, 1985, Johnston was served with a petition for a change in custody filed by Clark, asking the court to assume jurisdiction for the purpose of modifying the North Carolina order of November 20, 1980, and to award her custody based on a change of circumstances.

On February 11, 1985, Johnston filed a petition in the Chancery Court of Arkansas County, Arkansas, asserting Arkansas County to be the proper jurisdiction for custody determination proceedings.

In response to Clark's petition for change of custody in Henrico County, Johnston filed a motion to dismiss on the ground that the court lacked jurisdiction. He also filed an answer asserting: (1) that he was entitled to custody under the North Carolina order of November 20, 1980; (2) that the court lacked jurisdiction to transfer custody of Amanda; and (3) that Arkansas was the proper jurisdiction under the Uniform Child Custody Jurisdiction

Act (UCCJA) to determine custody of Amanda. He also moved the court to transfer jurisdiction to Arkansas County, Arkansas, for all further proceedings.

On April 12, 1985, a hearing was held in the Henrico Juvenile and Domestic Relations District Court to determine temporary custody of Amanda. The court granted temporary custody to the mother during the pendency of the suit, and set the case for trial on May 14, 1985, at 2:30 p.m.

Instead of proceeding with the case on its merits, Johnston filed a petition for a writ of prohibition in the Henrico Circuit Court seeking to bar the Henrico Juvenile and Domestic Relations District Court from considering any further questions concerning custody, visitation or support on the ground that this state did not have jurisdiction by virtue of the provisions of the Parental Kidnapping Prevention Act (PKPA) and the UCCJA. Johnston filed this suit on April 15, 1985, and on the same day filed a motion in the circuit court to stay and suspend the change of custody proceedings pending in the Henrico Juvenile and Domestic Relations District Court. Upon Johnston's motion, the circuit court on May 8, 1985, ordered the Henrico Juvenile and Domestic Relations District Court to take no further action in the custody matter until a final decision was rendered on the petition for a writ of prohibition. The record reflects that the Henrico Circuit Court heard evidence on June 3, 1985, on the petition. On November 27, 1985, it entered an order denying the writ of prohibition and dissolving the order of May 8, 1985, staying and suspending the proceedings in the Henrico Juvenile and Domestic Relations Court. The correctness of the circuit court's order of November 27, 1985, is before this court on appeal.

This issue is to be determined on well established general principles of law concerning writs of prohibition. Our Supreme Court has summarized these principles in *Supervisors of Bedford v. Wingfield*, 68 Va. (27 Gratt.) 329 (1876), as follows:

2. But, like all other extraordinary remedies, prohibition is to be resorted to only in cases where the usual and ordinary forms of remedy are insufficient to afford redress. And it issues only in cases of extreme necessity; and, before it can be granted, it must appear that the party aggrieved has no remedy in the inferior tribunals. The jurisdiction is exercised by

appellate or superior courts, to restrain inferior courts from acting without authority of law where damage or injustice are likely to follow from such action.

3. It is not a writ of right granted *ex debito justitiae*, but rather one of sound judicial discretion, to be granted or withheld according to the circumstances of each particular case. And being a prerogative writ, it is to be used like all other prerogative writs, with great caution and forbearance, for the furtherance of justice, and to secure order and regularity in judicial proceedings, where none of the ordinary remedies provided by law are applicable.

4. It is a principle of universal application, and one which lies at the very foundation of the law of prohibition, that the jurisdiction is strictly confined to cases where no other remedy exists; and it is always a sufficient reason for withholding the writ, that the party aggrieved has another and complete remedy at law.

5. Another fundamental principle, and one which is to be constantly borne in mind in determining whether an appropriate case is presented for the exercise of this extraordinary jurisdiction is, that the writ is never allowed to usurp the functions of a writ of error, and can never be employed as a process for the correction of errors of inferior tribunals.

*Id.* at 333-34 (citation omitted); *see In Re: Dept. of Corrections,* 222 Va. 454, 461-62, 281 S.E.2d 857, 861 (1981); *Lee v. Jones,* 212 Va. 792, 793, 188 S.E.2d 102, 103 (1972); *Rollins v. Bazile,* 205 Va. 613, 616, 139 S.E.2d 114, 117 (1964); *King v. Hening,* 203 Va. 582, 585, 125 S.E.2d 827, 829 (1962).

It is well settled that the writ of prohibition does not lie to correct error, but to prevent the exercise of the jurisdiction of the court by the judge to whom it is directed, either where he has no jurisdiction at all, or is exceeding his jurisdiction. If the court or judge has jurisdiction to enter order in the proceeding sought to be prohibited, the writ does not lie.

*Grief v. Kegley,* 115 Va. 552, 557, 79 S.E. 1062, 1064 (1913) (citations omitted).

A writ of prohibition is sought by Johnston to prevent further action by the Henrico Juvenile and Domestic Relations District

Court on the ground that it lacks subject matter jurisdiction. Johnston's position is untenable since the juvenile and domestic relations district courts of Virginia have general jurisdiction over all proceedings involving the custody, visitation, support, control or disposition of a child, except as otherwise provided in Code § 16.1-244, which is not applicable to this case. *See* Code § 16.1-241. The real issue in the case is not whether the Henrico Juvenile and Domestic Relations District Court has subject matter jurisdiction, but whether under the provisions of the Uniform Child Custody Jurisdiction Act the court should exercise its jurisdiction or should defer to a sister state that might be in a better position to exercise such jurisdiction. If this were strictly a legal matter, then a petition for a writ of prohibition might be an appropriate remedy. However, the proper resolution of the legal question in this case depends upon a proper finding of the facts, which may or may not be disputed. The juvenile and domestic relations district courts are specialized courts and were created separately from other district courts to provide a forum especially suited to resolve disputes involving children. In this connection they are well suited to resolve problems arising under the UCCJA, and to act as the fact-finder in contested cases. Johnston seeks the extraordinary remedy of a writ of prohibition, as opposed to the orderly process which the law has provided to resolve such disputes.

As previously stated, the writ of prohibition cannot be granted unless it appears that the party aggrieved has no remedy in the inferior tribunal. No reason has been advanced to indicate that Johnston will not receive a fair trial in the Henrico Juvenile and Domestic Relations District Court. All of the delay has been occasioned by the action of Johnston himself in not attending the trial on its merits scheduled on May 14, 1985, and in seeking and securing a stay of the proceedings in the Henrico Juvenile and Domestic Relations District Court. If he had been aggrieved by the decision of the court, he had an absolute right of appeal to the circuit court, and an appeal of right from the circuit court to this court upon the merits.

A writ of prohibition is a discretionary remedy, and should not be used as a substitute for matters that properly belong in the

trial court. For the reasons stated, the writ of prohibition is denied and we affirm the judgment of the Henrico Circuit Court.

*Affirmed.*

Koontz, C.J., and Hodges, J., concurred.